UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KEVIN SONDEREGGER,                  )
                                    )
        Plaintiff,                  )
                                    )
    vs.                             )        Case No. 4:20-cv-1026-MTS
                                    )
SPECIALIZED LOAN SERVICING, LLC,    )
SERVICER FOR US BANK, *et al.*,     )
                                    )
        Defendants.                 )

**MEMORANDUM AND ORDER**

The matter before the Court is several Defendants' Motions to Dismiss, Doc. [76]; Doc. [79]; Doc. [82]; Doc. [89], the Second Amended Complaint, Doc. [68].  For the reasons set forth below, the Motions are granted in part and denied in part.

**I.    BACKGROUND**[1]

Plaintiff Kevin Sonderegger, a *pro-se* plaintiff, filed this lawsuit asserting claims against eight[2] Defendants relating to allegedly unlawful loans made to Plaintiff regarding his two mortgages and subsequent misrepresentations regarding modifications to the two loans.

On March 30, 2007, Defendant First Franklin Financial Corp. ("First Franklin") entered two loan transactions for the purchase of certain real property.  These two loan transactions are the subject of Plaintiff's claims against Defendants.  In connection with the loans, Plaintiff executed a promissory note (the "Note") and secured the second loan by a deed of trust ("DOT").  The Note

---

[1] The Court draws these facts from Plaintiff's allegations in the Second Amended Complaint, Doc. [68].  In so doing, the Court must liberally construe the complaint in favor of Plaintiff and must grant all reasonable inferences in his favor. *Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020).

[2] The Court dismissed claims against Defendant US Bank National Trust Series 2007-3 on November 3, 2021. *See* Doc. [161].  Thus, it is not part of this Memorandum and Order.

1

states that the late fee is $40.00 (with a monthly contracted payment for $314.99) and would be billed after 10 days of non-payment.  The accompanying DOT states that the loan cannot violate applicable law; the DOT requires that if interest or charges collected violates applicable law, the servicer is required to refund the excess amount collected to the borrower or apply the excess to the principal balance of the loan.  Plaintiff alleges that these fees and charges were illegal from the outset.

Plaintiff alleges that "sometime around October of 2009," Defendant Home Retention Services Inc. ("HRS"), misrepresented itself as the home retention department of First Franklin and made several misrepresentations that induced him to stop paying his mortgage payments in order to qualify for a Home Affordable Modification Program ("HAMP") loan modification for *both* loans.[3]  After purportedly relying on these representations, Plaintiff stopped making payments on both loans and began submitting trial period payments from May 2010 to July 2010.  Doc. [68] ¶¶ 31–32.  After completing the necessary trial payments to qualify for the HAMP modification, Plaintiff received the paperwork to finalize the modifications.  Upon review, Plaintiff learned that the trial payment was for the first loan only.  The modification team "re-assured" Plaintiff everything was fine and told him that the second loan was "discharged and would either be forgiven or modified under a new program being released" for the second loan.  *Id.* ¶ 33.  Relying on additional misrepresentations, Plaintiff entered into a HAMP Agreement (the "Agreement") with "First Franklin Loan Services" in August 2010.  *Id.* ¶¶ 31–36.  Plaintiff alleges that at all times the agent and entity rendering the loan modification advice represented themselves as the Home Modification Department of First Franklin, not HRS.

---

[3] HRS allegedly stated that it (1) reviewed Plaintiff's loans, and they were eligible for a modification; (2) could not send Plaintiff an application until he went into default; and (3) did not have access to Plaintiff's loan files but could only access them if he went into default.

From February 2010 to August 2010, Plaintiff did not receive any monthly statements for either loan.  On August 26, 2010, Plaintiff received a financial statement showing $1,257.60 in additional charges representing title work and foreclosure fees.  Plaintiff allegedly was never informed of these fees or that he would be liable for the foreclosure transactions that accrued from the advised default.  *Id.* ¶ 36.  Plaintiff attempted to contact "the home retention department of First Franklin," however they never replied and shortly afterward its phone number stopped operating.  *Id.* ¶ 37.  Plaintiff then attempted to contact First Franklin; however, Defendant Bank of America, N.A. ("BOA")[4] answered the phone and stated First Franklin had gone out of business. Plaintiff alleges that HRS and First Franklin misrepresented the costs and fees for a HAMP modification and HRS misrepresented its intention and ability to modify the loans.[5]

On September 15, 2010, Plaintiff received letters informing him that both loans were transferring to BOA.  BOA informed Plaintiff that the first loan was modified but that the second loan was never modified; the second loan was delinquent from December 2009 and had accrued late fees.[6]  The new total principal balance was now $5,000 above closing.  Plaintiff told BOA that he was instructed to quit paying, and BOA completely denied any part in First Franklin's instructions.  Concerned with the inconsistencies, Plaintiff checked his credit score and discovered it was at 460 and that his loan had been reported into default.  *Id.* ¶ 41.  Plaintiff repeatedly called BOA for months, and it allegedly continued to assert that the late fees were legitimate and that nothing could be done to correct the credit score.  *Id.* ¶ 41–44.  BOA told Plaintiff that it could not

---

[4] Plaintiff incorrectly named Defendant BOA as Bank of America, Inc. in his Complaint.

[5] By relying on the alleged misrepresentations, Plaintiff suffered extensive damage to his credit score, a loan to value ratio higher than the value at closing, and a second mortgage 10 months into default with the result being no ability to negotiate better terms than what the Servicer and Investors would offer. Doc. [68] ¶ 87.

[6] The Agreement states that any late fees associated with overdue loan payments will be waived.  Doc. [68] ¶ 81.

assist with the second loan modification or late fees as First Franklin (and not BOA) was the servicer at that time.  Instead of assisting, Plaintiff alleges BOA demanded that he pay the past due amounts on the second loan and denied liability for the second loan being in default due to First Franklin's instructions.  Plaintiff alleges that in reality, BOA "had the ability and knowledge to remedy the Plaintiff[']s loan at any moment in a responsible manner" as it was the successors-in-interest to and the alter ego of First Franklin during the time in question.  *Id.* ¶¶ 66–69, 156.  Specifically, in January 2009, BOA allegedly acquired Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") and all of Merrill Lynch's operating subsidiaries and affiliates, which included First Franklin.  *Id.*  Thus, BOA and Merrill Lynch allegedly had the "ability and knowledge to remedy Plaintiff's loan at any moment in a responsible manner however it simply was not in their long term financial interest to do so . . ."  *Id.* ¶ 156.  Plaintiff alleges BOA and Merrill Lynch intentionally concealed their wrongdoing by "brushing all of their illegal and negligent conduct around the name of First Franklin and have made an attempt to move into the future with zero accountability for the damages they caused while retaining liens to reap full reward."  *Id.* ¶ 154.

Plaintiff alleges BOA offered to assist with a *new* modification application for the second loan.  Plaintiff alleges BOA accepted the application, promised the modification was imminent, then informed him that his application was incomplete, and had him re-apply again.  Without ever completing the modification for the second loan, BOA transferred servicing of the second loan to Defendant Carrington Mortgage Services, LLC ("Carrington") in June 2011.  At the time Carrington took over, the balance due on unpaid interest and late fees was now $7,000.  *Id.* ¶ 46.  Plaintiff continued to reach out to BOA regarding the loan modification and late charges, but BOA allegedly refused to assist since the loan was now being serviced by Carrington and that the two

were not affiliated. Plaintiff alleges that BOA was actually the "Master Servicer" of the entire trust. *Id.* ¶¶ 104–105. Plaintiff alleges BOA "concealed [its] role as [it] would continue to move loans into vendors that were not official servicers while telling borrowers that [it was] not able to assist as [it] no longer had 'servicing' rights.'" *Id.* ¶ 156.[7] Also, BOA and Merrill Lynch allegedly worked with third party companies, allowing them to "conceal their identity and drive loans into default in order to contrive greater funding from the government sponsored modifications with no regard to the damage that it caused borrowers." *Id.* ¶ 155.

In December 2014, Carrington transferred servicing of the second loan to Defendant Specialized Loan Servicing, LLC ("SLS") and Defendant U.S. Bank National Association, as Trustee for First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-FFC ("US Bank") was listed as the creditor. SLS remains the current servicer on the second loan. Plaintiff repeated his request to SLS for a modification and "continued to be dismissed." Doc. [78] ¶ 52. Plaintiff also tried calling US Bank for "months." attempting to "uncover the status of the loan and found no information and received no response." *Id.* ¶ 53. As of July of 2015, "Plaintiff realized that the parties he was attempting to communicate were never going to honor the promises of modification and remedy, yet [] Plaintiff had no means of identifying the parties responsible." *Id.* From 2016 to 2018, Plaintiff continued to seek answers, and used every attempt to find the original creditor and successors of interests on the second loan to find who was responsible for the misrepresentations (*ie*: the failed modification and charges), but Plaintiff continued to be stonewalled. *Id.* ¶¶ 54–57. Plaintiff also alleges he asked SLS and US Bank to review the terms and conditions of the second loan's Note and DOT, and that they never informed

---

[7] According to Plaintiff, Carrington was also not a proper "servicer" under the law and BOA acknowledged that Carrington "did not review or make modifications that it was required to make, did not engage in loss mitigation, and did not send out monthly statements to loans in accordance with the transaction agreements of the Trust. Doc. [68] ¶¶ 107–110.

him of any violations, failed to investigate as requested by Plaintiff, and never refunded or adjusted the balance based on the alleged illegal fees charged. Despite Plaintiff's protestations that the loan amount is illegitimate, SLS sent Plaintiff a letter of Notice of Default and Notice of Intent to Foreclose on July 2, 2019. Plaintiff alleges that Defendants ignored the fee violations in order to force a foreclosure and redeem an illegal mortgage for full profit. Plaintiff alleges that since the July 2019 letter, SLS has also charged other improper fees of its own, at least six times. Plaintiff alleges he did not discover the existence of HRS until 2019.

In November 2019, Plaintiff filed his initial complaint against SLS. Doc. [6]. On June 30, 2020, Plaintiff filed his Second Amended Complaint ("Complaint") naming multiple new defendants. Doc. [6]. In the Complaint, Plaintiff asserts sixteen counts against various Defendants: negligent misrepresentation/fraudulent concealment (Counts I–II); breach of contract (Count III); violation of the Missouri Second Mortgage Loan Act ("MSMLA"), Mo. Rev. Stat. § 408.233 (Counts IV–VI, VIII–IX); breach of contract (Count VII); violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(b)(1) (Counts XI and XIII); violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 (Counts X and XII); and quiet title (Counts XIV–XVI). Doc. [68]. Defendants SLS, US Bank, First Franklin, BOA, Merrill Lynch, HRS, and Carrington all move to dismiss all counts under Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff failed to state a claim either because they are preempted, barred by the statute of limitations, lack sufficient allegations, rely on irrelevant law, or all the above. Doc. [76]; Doc. [79]; Doc. [82]; Doc. [89].

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The purpose of such a motion is to test

the legal sufficiency of a complaint.  When considering a Rule 12(b)(6) motion, the Court assumes all of a complaint's factual allegations to be true and makes all reasonable inferences in favor of the nonmoving party.  *See Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989); *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  To survive a motion to dismiss, the complaint must allege facts supporting each element of the plaintiff's claims, and the claims cannot rest on mere speculation.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Specifically, the complaint "must allege more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'" and instead must "allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'"  *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court "need not accept as true plaintiff's conclusory allegations or legal conclusions drawn from the facts."  *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).  The Court does not decide whether the plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to present evidence in support of the claim.  *See Twombly*, 550 U.S. at 556.

## III.   DISCUSSION[8]

### A.  Negligent Misrepresentation (Counts I–II)

Plaintiff asserts two counts (Counts I–II) of negligent misrepresentation/fraudulent concealment.  Count I relates to the first loan and is asserted against Defendants First Franklin, BOA, Merrill Lynch, and HRS.  Count II relates to the second loan and is asserted against

---

[8] In his some of his common-law claims, Plaintiff never expressly states that Missouri law applies.  The Court, construing the Complaint liberally and in Plaintiff's favor, finds Missouri law applies.  *Jackson v. Nixon*, 747 F.3d 537, 544 (8th Cir. 2014) (noting pro se complaint "should be given liberal construction" and that district courts should construe pro se complaints "in a way that permits the layperson's claim to be considered within the proper legal framework").  Of importance, Plaintiff repeatedly cites Missouri case law and statues in his Complaint, the home at issue is in Missouri, and Defendants all briefed the issues applying Missouri law.

Defendants First Franklin, BOA, Merrill Lynch, US Bank, and HRS.  Defendants move to dismiss Plaintiff's claims for negligent misrepresentation arguing that the statute of limitations bars the claims, or alternatively, that Plaintiff failed to state a claim for misrepresentation.[9]  Both arguments are discussed in turn.

### a.   Statute of Limitations

First, Defendants First Franklin, BOA, Merrill Lynch, and HRS move to dismiss Counts I–II arguing that Plaintiff's claims are barred by the statute of limitations.  Doc. [83] at 9–13; Doc. [77] at 5–10.  The statute of limitations for fraudulent and negligent misrepresentation is five years.  Mo. Rev. Stat. § 516.120(5).  A cause of action for negligent misrepresentation accrues when damages are sustained and are capable of ascertainment.  Mo. Rev. Stat. § 516.100.  The Missouri Supreme Court has determined damage is "capable of ascertainment" from the standpoint of a reasonable person in the plaintiff's situation.  *Levitt v. Merck & Co., Inc.*, 914 F.3d 1169, 1171–72 (8th Cir. 2019) (interpreting Missouri Law).  Even if the statute of limitations has begun to run, the limitation period is tolled "if any person, by absconding or concealing himself, or by any other improper act, prevents the commencement of an action."  Mo. Rev. Stat. § 516.280.  The doctrine, known as fraudulent concealment, is inapplicable "if a plaintiff knows or should have known he

---

[9] Defendants BOA, Merrill Lynch, and First Franklin also argue Plaintiff's claims are barred by either the statute of frauds or Missouri's Economic Loss Doctrine. Doc. [83] 13–14.  Their statute of frauds argument is unavailing as Plaintiff's claims are for misrepresentation, not for a breach of a contract.  Similarly, BOA, Merrill Lynch, and HRS's economic loss doctrine argument is unavailing.  "The economic loss doctrine bars 'recovery of purely pecuniary losses in tort where the injury results from a breach of a contractual duty.'" *Dubinsky v. Mermart, LLC*, 595 F.3d 812, 819 (8th Cir. 2010) (quoting *Zoltek Corp. v. Structural Polymer Group, Ltd.*, No. 4:08-cv-460-CEJ, 2008 WL 4921611, at *3 (E.D.Mo. Nov. 13, 2008).  Here, the alleged misrepresentations lack the precise nexus to the Agreement—the controlling "contract."  As the Court just explained, Plaintiff pleads that the misrepresentation claim is distinct from a breach of a contractual duty, as the crux of Plaintiff's Complaint is that BOA, Merrill Lynch, and HRS's misrepresentations induced him to enter into the Agreement and also misrepresented their ability to perform its obligations under the Agreement.  Also, that the misrepresentations induced him to stop paying his loans and fall into default, but the Agreement never explicitly required such action. *Web Innovations & Tech. Servs., Inc. v. Bridges to Digital Excellence, Inc.*, 69 F. Supp. 3d 928, 933 (E.D. Mo. 2014) ("A fraud claim independent of the contract is actionable, but it must be based upon a misrepresentation that was outside of or collateral to the contract, such as many claims of fraudulent inducement.").  As such, it cannot be said that that the misrepresentations solely derive from contractual duties, and Plaintiff's claim is not barred by Missouri's economic loss doctrine.

had a cause of action." *State ex rel. Heart of Am. Council v. McKenzie*, 484 S.W.3d 320, 325 (Mo. banc 2016) (quoting *M & D Enterprises, Inc. v. Wolff*, 923 S.W.2d 389, 400 (Mo. Ct. App. 1996)). A motion to dismiss on statute of limitations grounds should not be granted unless the complaint establishes on its face and without exception that the claim is barred. *Patel v. Pate*, 128 S.W.3d 873, 877 (Mo. Ct. App. 2004).

### i. *First Loan* (Count I)

Count I focuses on the first loan. Defendants First Franklin, BOA, Merrill Lynch, and HRS argue that Count I is time-barred because Plaintiff's damage was ascertainable in 2010, when he was charged additional fees and discovered that the principal balance on the first mortgage was different than allegedly represented.

**Defendants First Franklin, BOA, and Merrill Lynch**: Although Plaintiff learned of the additional fees in 2010, it is incorrect to "equate sustainment of injury with when the damages are capable of ascertainment." *Powel*, 197 S.W.3d at 584. Rather, the "capable of ascertainment" test finds that "a cause of action accrues when 'the injury to plaintiff was complete as a legal injury.'" *Koester v. American Republic Investments, Inc.*, 11 F.3d 818, 821 (8th Cir. 1994) (quoting *Chemical Workers Basic Union v. Arnold Sav. Bank*, 411 S.W.2d 159, 165 (Mo. banc 1966). "The issue is not when the injury occurred, or when plaintiff subjectively learned of the wrongful conduct and that it caused his or her injury, but when a *reasonable person* would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." *Powel*, 197 S.W.3d at 584 (emphasis added). Plaintiff alleges First Franklin, BOA, and Merrill Lynch[10] (1) misrepresented the terms and costs associated with the modification of the first mortgage, (2) misrepresented the requirement of having to fall

---

[10] Plaintiff alleges that First Franklin operated as a subsidiary of Defendants Merrill Lynch and BOA.

into default to apply for a HAMP modification, (3) mispresented the late fees associated with default, and (4) misrepresented their inability to assist with the charges and fees, even though BOA and Merrill Lynch were able to do so.  The Court concludes that Plaintiff pleads sufficient facts that a reasonable person may not have been "put on notice" that a legal injury occurred, even though part of the damage was discoverable in 2010.  Thus, the Court cannot find that "on its face," Count I is time-barred.[11]  *Patel*, 128 S.W.3d at 877.

**Defendant HRS**: At this stage in the proceedings, it is equally unclear when and if the limitation period began to run against HRS.[12]  Even assuming the statute of limitations against HRS began to run in 2010, the pleadings appear to show that the doctrine of fraudulent concealment may have tolled the limitation period.  *See* Mo. Rev. Stat. § 516.280.  "The essence of a fraudulent concealment action is that a defendant affirmatively intends to conceal from plaintiff the fact that the plaintiff has a claim against the defendant." *Batek v. Curators of Univ. of Mo.*, 920 S.W.2d 895, 900 (Mo. banc 1996) (internal citations omitted).  According to Plaintiff, HRS did just that.  Plaintiff pleads that HRS at all times represented itself as the home retention department of First Franklin (a different Defendant), both in material form in the paperwork and over the phone, when making the alleged misrepresentations.  Thus, HRS misrepresented itself as an entity able to conduct loan modifications, but in reality, had *no* control over the terms and

---

[11] And even if the statute of limitations began to run against BOA and Merrill Lynch in 2010, Plaintiff alleged facts appearing to show that the limitation period was tolled due to their improper acts that prevented commencement of the action.  Mo. Rev. Stat. § 516.280.

[12] Plaintiff and HRS's tolling argument presupposes that the statute of limitations began running at an earlier time.  However, the Court finds there are "contradictory or different conclusions [that] may be drawn from the [exhibits of record] as to whether the statute of limitations has run, [and is thus] a question of fact for the jury to decide." *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 585 (Mo. banc 2006) (internal quotations omitted).  Thus, although the Court decided the tolling argument in this Motion, it does not also hold that the statute of limitations did in fact start running against HRS at the time they suggest.

execution of the mortgage modifications as allegedly represented.[13]  Thus, the pleadings show that HRS may have acted in a way that prevented Plaintiff from realizing he had a claim against HRS. *Roth v. Equitable Life Assur. Soc. of U.S.*, 210 S.W.3d 253, 259 (Mo. Ct. App. 2006) (requiring a defendant takes affirmative actions with the intent to prevent the plaintiff from realizing that the plaintiff has a claim against the defendant in a fraudulent concealment claim); *Batek*, 920 S.W.2d at 900.  Plaintiff allegedly did not discover until 2019 that HRS, not First Franklin, was the true "actor" and thus, incapable of ever modifying the loan.  And whether 2019 was a "reasonable" time to toll the limitation period is fact-specific and inappropriate to determine on a motion to dismiss.[14]  *Doe v. O'Connell*, 146 S.W.3d 1, 4 (Mo. Ct. App. 2004) (explaining fraudulent concealment requires actions by the defendant that would justifiably cause a "reasonable person" to refrain from suit); *Batek*, 920 S.W.2d at 900 (citing *Smile v. Lawson*, 435 S.W.2d 325, 328 (Mo. banc 1968) (explaining fraudulent concealment tolls the limitation period until the "plaintiff discovers, or by exercise of reasonable diligence could have discovered, that he has a cause of action")).

HRS further argues that Plaintiff *did* know of its existence based on the Agreement in 2010. The Agreement is allegedly the only documentation that ever alluded to HRS's "true name"— Home Retention Services Inc.  *See* Exhibit 10.  However, the few times HRS's "true name" was mentioned in the Agreement interchangeably uses the words "services" with "group" and "department."  Doc. [68] ¶ 80.  Plaintiff asserts that this paperwork was "intentionally designed to conceal the true identity" of HRS.  *Id.*  Moreover, the Agreement states that the modification was

---

[13] Plaintiff pleads that HRS used "methods used to represent themselves as the home retention department of First Franklin the Plaintiff acted on good faith and reasonable reliance that the representatives he was engaged in had the ability to perform the promises that they made." Doc. [68] ¶ 87.

[14] Plaintiff argues that the statute of limitations should be tolled between the date in which Plaintiff was instructed to quit paying his mortgage until the identity of HRS was discovered. Doc. [68] at 39.

for First Franklin and does not indicate that HRS was engaging on behalf of First Franklin. The standard holds that tolling is inapplicable if a plaintiff "knows" or "should have known" he had a cause of action. *Heart of Am. Council*, 484 S.W.3d at 325. The Court does not find at this stage of the litigation that the one-time document "mention" of HRS, especially compared to the handful of documents and communications purporting to be First Franklin, is enough to find that Plaintiff "should have known" he had a cause of action against HRS as a matter of law. Namely, because HRS disguised itself as a completely different entity (First Franklin) with the ability to modify loans, when in fact, it was not. Thus, Plaintiff pleaded sufficient facts to toll the five-year limitation period because allegations show HRS purposefully concealed itself by masquerading as the home retention department of First Franklin with ability to modify loans.

### ii.  *Second Loan* (Count II)

Count II focuses on the second loan. Defendants First Franklin, BOA, Merrill Lynch, and HRS argue that Count II is time-barred because Plaintiff's damage was ascertainable in 2010, when he discovered the second mortgage was "not modified" as allegedly represented, and as a result, Plaintiff learned the loan was 10 months into default.

**Defendant First Franklin**: Plaintiff alleges that First Franklin represented it would modify the second loan but did not. The Court agrees that the limitation period relating to First Franklin's misrepresentations began to run in 2010, because at that point, Plaintiff should have known the "fact of damage" of First Franklin's allegedly wrongful conduct in promising to modify the first and second loan, but only modifying the first. Thus, at that point, Plaintiff was "put on notice" an injury may have occurred, and that "substantial damages" were to occur based on the loan being 10 months into default. *Powel*, 197 S.W.3d at 584. The same logic applies to the Court's conclusion that fraudulent concealment is also inapplicable here. *Heart of Am. Council*, 484

S.W.3d at 325 (tolling is inapplicable if a plaintiff "knows" or "should have known" he had a cause of action).

**Defendant BOA and Merrill**:  Although the limitation period relating to First Franklin's misrepresentations of modifying the second loan began to run in 2010, different conclusions may be drawn from the pleadings as to whether the limitations period similarly ran against BOA and Merrill Lynch in 2010.  Plaintiff pleads that BOA and Merrill Lynch mispresented[15] to Plaintiff that they were not responsible for, or participants in, the actions performed by First Franklin, although they were,[16] in order to accumulate fees, charges, and interests for their benefit.  According to Plaintiff, the longer BOA and Merrill Lynch "played dumb" about the loan modification, the more the principal balance of the amount due on the mortgage increased, benefiting them financially.  Thus, it is unclear from the pleadings when the damages from the second loan were sustained and "capable of ascertainment," with respect to BOA and Merrill Lynch.  Mo. Rev. Stat. § 516.100; *Levitt*, 914 F.3d at 1171–72.  Because there are contradictory or different conclusions that may be drawn from the pleadings and exhibits as to whether the statute of limitations has run, it is a question of fact not appropriate for a motion to dismiss.  *Powel*, 197 S.W.3d at 585 ("when contradictory or different conclusions may be drawn from the evidence as to whether the statute of limitations has run, it is a question of fact for the jury to decide." (internal

---

[15] As an example, Plaintiff pleads "Merrill Lynch and Bank of America further concealed their role as they would continue to move loans into vendors that were not official servicers while telling borrowers that they were not able to assist as they no longer had "servicing" rights. Merrill Lynch and BOA allegedly had the ability and knowledge to remedy the Plaintiffs loan at any moment in a responsible manner however it simply was not in their long term financial interest to do so despite their primary role in the creation of the crisis." Doc. [68] ¶ 156.

[16] Plaintiff pleads that in 2009, BOA acquired Merrill Lynch and all of Merrill Lynch's operating subsidiaries and affiliates, including First Franklin, and thus, became the successor-in-interest to and the alter ego of First Franklin & Merrill Lynch Co and each of their affiliated entities during the time in question. Doc. [68] ¶¶ 66–69.

quotations omitted)).[17]

Nonetheless, the Court finds that it is clear, based on the pleadings, that the limitation period regarding BOA's *own* misrepresentations regarding its ability to modify the second loan did not begin to run in 2010. Because BOA could not purportedly help with the modification to the second loan, as discussed above, Plaintiff alleges BOA offered to assist with a *new* modification. Plaintiff pleads that BOA mispresented to Plaintiff that a modification for the second loan was imminent from 2010 to 2011, although BOA allegedly had no intention of ever modifying the loan. Plaintiff alleges BOA accepted the application for the second loan modification, promised the modification was imminent, then informed him that his application was incomplete, and had him re-apply again. Without ever completing the modification for the second loan, BOA transferred servicing of the second loan to Carrington in June 2011. Plaintiff continued to reach out to BOA regarding the loan modification and charges, but BOA allegedly refused to assist since the loan was now being serviced by Carrington, and according to BOA, the two were not affiliated. However, Plaintiff alleges that during this time, BOA was the Master Servicer of the loan and actually did have the ability to help, but instead misrepresented its ability, or rather inability to help, in order to accumulate fees, charges, and interests for its benefit[18]—just as BOA

---

[17] And even if the statute of limitations began to run against BOA and Merrill Lynch in 2010, Plaintiff pleads wrongful actions of BOA and Merrill Lynch that may have tolled the limitation period due to their alleged improper acts that prevented commencement of the action. Mo. Rev. Stat. § 516.280. According to Plaintiff, BOA and Merrill Lynch affirmatively intended to conceal the fact that the plaintiff had a claim against the defendant. *Batek*, 920 S.W.2d at 900. Plaintiff pleads that BOA and Merrill Lynch mispresented to Plaintiff that they were not responsible for, or participants in, First Franklin's servicing of the loan, although they were, in order to accumulate fees, charges, and interests for their benefit. *Id.* (quoting *Womack v. Callaway County,* 159 S.W.2d 630, 632 (Mo. 1942) (explain fraudulent concealment can be shown if some trick was used to prohibit defrauded party from inquiring or making investigation into the fraud or that the defrauded party was prevented from inquiring about the particular acts of concealment). Thus, those misrepresentations concealed from Plaintiff that he had any claim against BOA and Merrill Lynch for First Franklin's misrepresentations regarding modification to the second loan. Thus, the Court cannot find that "on its face," Count I is time-barred. *Patel*, 128 S.W.3d at 877.

[18] Plaintiff pleads that BOA was actually listed as Master Servicer on the entire trust and therefore had the ability to take responsibility for the loan during the time it was in Carrington's possession, even though it misrepresented its ability to do so. Doc. [68] ¶¶ 103–105.

misrepresented its inability to help with First Franklin. Thus, Plaintiff pleaded enough facts to warrant discovery in order to determine when the statute of limitations began to run (*ie*: when there was a complete "legal injury"). *Twombly*, 550 U.S. at 556 (explaining that the motion to dismiss standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]."). This is especially true since Plaintiff pleads, which the Court must at this stage accept as true, that he was unaware any misrepresentation to modify the second loan had taken place until July 2015. Doc. [68] ¶ 53; *see Powel*, 197 S.W.3d at 585.

**Defendant HRS**: Despite the Court's conclusion that the statute of limitations bars Plaintiff's claim against First Franklin relating to its misrepresentations of the second loan, different conclusions may be drawn from the pleadings as to whether the limitations period similarly ran against HRS. Plaintiff allegedly was unaware any misrepresentation regarding the intention to modify the second loan had taken place until 2015 and pleads he did not learn HRS misrepresented itself as an entity able to conduct loan modifications until 2019. Whether 2015 or 2019 is reasonable conclusion drawn from the exhibits is a question of fact not appropriate for a motion to dismiss. *Powel*, 197 S.W.3d at 585.[19]

### b.  Merits

Next the Court considers whether Plaintiff properly pleaded negligent misrepresentation under Missouri law. Only Defendants HRS and US Bank contest the adequacy of the pleadings. To state a claim for negligent misrepresentation under Missouri law, a plaintiff must show: (1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to

---

[19] And even if the statute of limitations began to run against HRS in 2010, Plaintiff pleads facts showing the allegedly wrongful actions of HRS may have tolled the limitation period due to HRS's improper acts that prevented commencement of the action. Mo. Rev. Stat. § 516.280. According to Plaintiff, HRS affirmatively intended to conceal the fact that Plaintiff had a claim against it. *Batek*, 920 S.W.2d at 900. Thus, the Court cannot find that "on its face," Count II is time-barred. *Patel*, 128 S.W.3d at 877.

exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss. *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo. banc 2010).

**Defendant HRS**: HRS moves to dismiss Counts I–II arguing that its alleged misrepresentations concerned future actions of independent third-parties outside HRS's control, and therefore, there was no proper "reliance" by Plaintiff.  Doc. [77] at 8.  Reliance is necessary to support a claim for misrepresentation, whether fraudulent or negligent.  *Ryann Spencer Group v. Assurance Co. of Am.*, 275 S.W.3d 284, 291 (Mo. Ct. App. 2008) ("require[ing] justifiable reliance on the misrepresentation, whether it be fraudulent or negligent.").  As a matter of law, a party is not entitled to rely on representations as to expectations or predictions for the future, especially regarding future actions of independent third parties.  *Id.*  In support of its Motion, HRS argues that Plaintiff had "no right" to rely on any representation by HRS as to what First Franklin, BOA, or any other lender and/or servicer—as independent third-parties—might do in the future as to loan modification.  Doc. [77] at 8–9.  Specifically, because HRS "simply processed information for independent third parties' [future] 'review and approval'" of the loan modification, HRS cannot be liable for misrepresentation.  *Id.* at 11.  The Court disagrees.

HRS's "future actions" argument is unavailing.  Plaintiff's allegation against HRS is not that HRS or the other Defendants here wrongfully refused to approve the loan modification.  *Ryann Spencer Group*, 275 S.W.3d at 291 (explaining that a "representation is not actionable if it regards the future actions of an independent third party").  Rather, Plaintiff pleaded that HRS misrepresented the guidelines to be eligible for a HAMP loan modification—such as presently

16

stopping loan payments—as well as HRS's ability to modify the loans. Thus, the crux of Plaintiff's complaint is not based on "unfulfilled promises or statements as to future events." *Id.* ("A claim for negligent misrepresentation generally cannot be based on unfulfilled promises or statements as to future events . . . ."). Moreover, the fact that HRS did not explicitly approve Plaintiff's modification application or control the terms and execution of modification is irrelevant here. "The duty not to fraudulently or negligently make factual misrepresentations to induce another person to form a contract is a duty that exists independently of any contractual obligations ultimately formed." *Elkhart Metal Fabricating, Inc. v. Martin*, No. 14-cv-00705, 2014 WL 2972709, at *2 (E.D. Mo. July 1, 2014) (interpreting a Missouri misrepresentation claim). Accordingly, irrespective of who actually makes the loan modifications, *albeit* an independent third-party, Plaintiff pleads that HRS's alleged misrepresentations did in fact induce Plaintiff to *presently* stop paying his loans and apply for and enter into the loan modification Agreement. Plaintiff in fact admits that HRS cannot offer loan modifications but alleges HRS misrepresented its identity, as well as ability and intention to modify the loan, which induced Plaintiff to enter the Agreement that did not modify the terms as sought.

**Defendant US Bank**: US Bank argues that Plaintiff fails to state a claim against it for negligent misrepresentation. Doc. [90] at 23. The Court agrees. Although Plaintiff properly pleads other parties (co-defendants) allegedly misrepresented the terms and conditions to be eligible for a loan modification and misrepresented its intention and ability to modify the second loan, Plaintiff does not allege that US Bank itself made any of the misrepresentations. Rather, with respect to this claim, Plaintiff's grievance against US Bank is that Plaintiff repeatedly attempted to contact US Bank but was stonewalled. Such actions are inherently contrary to a misrepresentation claim. *CADCO, Inc. v. Fleetwood Enterprises, Inc.*, 220 S.W.3d 426, 438 (Mo.

Ct. App. 2007) (explaining a misrepresentation claim requires a false statement or failure to communicate true information).

Therefore, the Court denies Defendants First Franklin, BOA, Merrill Lynch, and HRS's motion to dismiss Count I.  As to Count II, the Court denies Defendant BOA, Merrill Lynch, and HRS's motion to dismiss Count II and grants Defendants First Franklin and US Bank's motion to dismiss Count II with prejudice.

### B.  Breach of Contract (Count III)

Plaintiff asserts a breach of contract (Count III) claim against Defendants First Franklin, Merrill Lynch, and BOA. The Court finds Count III unintelligible and thus cannot conclude Plaintiff stated a claim at all.

Therefore, the Court grants Defendants First Franklin, Merrill Lynch, and BOA's motion to dismiss Count III.

### C.  MSMLA (Counts IV–VI, VIII–IX)

Plaintiff makes several claims all grounded in violations of the Missouri Second Mortgage Loan Act ("MSMLA"), Mo. Rev. Stat. § 408.233.  Plaintiff asserts Counts IV–VI[20] against Defendants First Franklin, BOA, Merrill Lynch, US Bank, SLS, and Carrington protesting the amount of a late fee ($40), the timing when it is imposed (after 10 days), and the alleged attempted to collect the fee multiple times.  Doc. [68] ¶¶ 23–27, Count IV; ¶ 32, Count V, ¶¶ 35–38, Count VI.  Plaintiff asserts Count VIII against Defendants BOA, Merrill Lynch, US Bank, and SLS alleging that those Defendants have not acknowledged the violation or refunded amounts submitted, and that continuing to send demand letters to pay the balance is a continual violation.

---

[20] Plaintiff asserts Count IV against Defendants First Franklin, BOA, Carrington, and US Bank.
Plaintiff asserts Count V against Defendants First Franklin, BOA, Merrill Lynch, and US Bank.
Plaintiff asserts Count VI against Defendants First Franklin, BOA, Carrington, SLS, and US Bank.

*Id.* ¶¶ 54–56, Count VIII.  Plaintiff asserts Count IX against Defendants SLS and US Bank regarding an allegedly illegal property inspection fee in violation of the MSMLA.  *Id.* ¶ 58, Count IX.

First, Defendants all argue that the MSMLA violations are barred by the three-year statute of limitations of Mo. Rev. Stat. § 516.130(2).  Doc. [90] at 12; Doc. [80] at 3; Doc. [83] at 18. Plaintiff argues that the Court should instead invoke the six-year statute of limitations of Mo. Rev. Stat. § 516.420,[21] or, alternatively, apply the "continuing wrong" exception.  Here, regardless of whether the statute of limitations is three or six years, Plaintiff's MSMLA claims under Counts IV, V, VI, and VIII are time-barred.[22]

Under Missouri law, the limitation period begins to accrue when the fact of damage becomes capable of ascertainment, even if the actual amount of damage is unascertainable.  *Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 899 (8th Cir. 2015).  "Damage is capable of ascertainment when it can be discovered or is made known, even if its extent remains unknown." *Id.* (quoting *D'Arcy & Assocs., Inc. v. K.P.M.G. Peat Marwick, L.L.P.*, 129 S.W.3d 25 (Mo. Ct. App. 2004)). For MSMLA purposes, the "fact of damage" is "capable of ascertainment" when the loan closes.[23]

---

[21] The Eighth Circuit repeatedly has held that the three-year statute of limitations applies to MSMLA cases. *Washington v. Countrywide Home Loans, Inc.*, 747 F.3d 955, 958 (8th Cir. 2014) ("MSMLA is subject to the limitations period of § 516.130(2)," which is three years); *Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 898 (8th Cir. 2015) ("A three-year statute of limitations applies to MSMLA claims"); *Thomas v. U.S. Bank NA ND*, 789 F.3d 900, 902 (8th Cir. 2015) (same). However, the Court takes note of the recent Missouri Court of Appeals case that applies the six-year limitation period, instead of the three-year period, as Plaintiff suggests. *See Baker v. Century Financial Group, Inc.*, 554 S.W.3d 426, 433–34 (Mo. Ct. App. 2018) (finding that MSMLA claims are subject to the six-year limitations period in Mo. Rev. Stat. § 516.420 rather than the three-year limitations period in Mo. Rev. Stat. § 516.130(2)). However, the Missouri Supreme Court has not ruled on this issue; thus, this Court is bound by Eighth Circuit precedent.

[22] Defendants also argue that the MSMLA claims are preempted by the National Bank Act.  However, because the Court determined that Counts IV, V, VI, and VIII are dismissed on other grounds, the Court does not address this argument with respect to those MSMLA claims.

[23] Plaintiff concedes that current case law starts running the statute of limitations at closing of the loan.  Nonetheless, Plaintiff argues that different MSMLA violations require different points of accrual. Doc. [109] at 8.  However, as

*Id.*   As applied here, the fees Plaintiff challenges in Counts IV, V, VI, and VIII were listed, as Plaintiff concedes, on his loan closing statement in March 2007,[24] and did not change when First Franklin transferred the loan to BOA, when BOA transferred the second loan to Carrington, or when Carrington transferred the loan to SLS.   Thus, making the "fact of damage" capable of ascertainment by 2007.   Because the Complaint was filed against SLS in November 2019 and the other Defendants in June 2020—well more than three or six years *after* than 2007—his actions are untimely.

Nonetheless, Plaintiff argues that the statute of limitations should be tolled pursuant to the "continuing wrong" exception because "each time the defendant charged the amount that was in violation of § 408.233 they created a continual cause of action."   Doc. [68] ¶ 27, Count IV. Courts, however, have expressly rejected the continuing tort doctrine, with respect to MSMLA claims, in situations exactly like this one.   *See, e.g.*, *Wong*, 789 F.3d at 899 (finding that the three-year statute of limitations began to run when the loan closed, not when the impermissible fees were charged); *Washington v. Countrywide Home Loans, Inc.*, No. 08-0459-CV-W-FJG, 2012 WL 4468761, at *5 (W.D. Mo. Sept. 26, 2012) ("The Court finds that the continuing tort doctrine is inapplicable in this matter, as the interest charged on the loans is a damage that would have been known plaintiffs at the time of loan closing, and does not constitute a continuing violation of the statute.") *aff'd*, 747 F.3d 955 (8th Cir. 2014); *D'Arcy*, 129 S.W.3d at 30 ("For the continuing tort exception to apply, damages resulting from one completed, wrongful act, although they may continue to develop, are not adequate." (internal quotations removed)).   Like in *Wong* and *Washington*, the

---

noted in Footnote 21, this Court is bound by Missouri Supreme Court and Eighth Circuit precedent, and both courts hold that the time of accrual for MSMLA violations is at the time of the loan closing.

[24] The 2007 date of the transaction controls because terms about charges and fees were agreed upon by Plaintiff at that time, Doc. [68] ¶¶ 13, 17, and the second mortgage was never modified from that date. Doc. [68] ¶ 24, Count IV and ¶ 37, Count VI.

allegedly unlawful charges here were a "damage" known to Plaintiff at the time of loan closing in 2007, and, thus, each charge did not result in a separate and recurring violation of the MSMLA, rendering the continuing tort doctrine inapplicable for limitations purposes.  Further, Eighth Circuit precedent holds that the statute of limitations does not "start over" for a subsequent assignee of a mortgage for the same offense as the original lender.  *See Wong*, 789 F.3d at 900. Thus, because Plaintiff was aware of the allegedly unlawful fee violation in 2007 when he entered into the loan transactions with First Franklin, the statute of limitations began to run then, even against subsequent assignees such as BOA, Carrington, SLS, and US Bank.

However, Count IX is not time-barred by the MSMLA limitation period, which relates solely to allegedly illegal property inspection fees charged by SLS and US Bank only.  Doc. [68] ¶ 58, Count IX.  According to Plaintiff, from "August of 2019 and continuing through February 2020, [SLS] has charged a $15.00 property inspection fee that is not an authorized charge for second mortgages in Missouri." *Id.* ¶¶ 57-60, Count IX.  Those fees allegedly were not part of the loan closing statement in March 2007; thus, the statute of limitations appears to have accrued in 2019, making Plaintiff's claims against SLS and US Bank timely.[25]

Finally, Defendants SLS and US Bank argue that Count IX may be barred by the National Bank Act ("NBA").  Doc. [90] at 6.  The NBA authorizes a national bank "to charge interest at the rate allowed by the laws of the state in which the bank is located." *Krispin v. May Dep't Stores Co.*, 218 F.3d 919, 922 (8th Cir. 2000) (citing 12 U.S.C. § 85).  The NBA preempts actions challenging the lawfulness of the "interest" charged by a national bank. *Phipps v. F.D.I.C.*, 417 F.3d 1006, 1011 (8th Cir. 2005); *see also Beneficial National Bank v. Anderson,* 539 U.S. 1, 11 (2003).  The issue here boils down to whether Plaintiff brought a claim of unlawful "interest"

---

[25] SLS and US Bank also argue that the inspection fees were properly charged under the Note and MSMLA.  Doc. [90] at 11.  Such a factual dispute is improper at the motion to dismiss stage.

charged by SLS and US Bank, notwithstanding Plaintiff's protestations that his claims focused on unlawful "inspection fees." Doc. [68] ¶ 58, Count IX. SLS and US Bank do not provide any cases where the NBA preempted inspection fees similar to the ones at issue here as "interest." Thus, whether the inspection fees constitute "interest" depends on the nature of the fees, which is an improper determination at this stage in the litigation. *Phipps*, 417 F.3d at 1011–013 (analyzing the different types of fees constituting "interest" for NBA purposes). At any rate, it is not clear on the face of the Complaint that the NBA preempts the action against SLS and US Bank because those "banks did not originate the loans at issue, but rather are assignee banks who subsequently purchased the loans." *Thomas v. U.S. Bank Nat. Ass'n ND*, 575 F.3d 794, 800–01 (8th Cir. 2009).

Therefore, the Court denies Defendants SLS and US Bank's motion to dismiss Count IX and grants Defendants SLS, US Bank, First Franklin, BOA, Carrington, and Merrill Lynch's motion to dismiss counts IV, V, VI, and VIII with prejudice.

### D. Breach of Contract (Count VII)

Plaintiff asserts a breach of contract (Count VII) claim against Defendants SLS, US Bank, First Franklin, Merrill Lynch, BOA, and Carrington.

First, Defendants all argue that because Plaintiff's breach of contract claim (Count VII) is grounded in MSMLA violations, that Count VII is similarly subject to the MSMLA's statute of limitations, like Counts IV, V, VI, VIII, and IX, and is therefore time-barred. Doc. [90] at 12; Doc. [80] at 3; Doc. [83] at 17–18. The Court disagrees with Defendants' interpretation of the Complaint. The Complaint states that Count VII is distinctly for a breach of contract, namely, that the DOT states that the loan cannot violate applicable law, and because the loan did allegedly violate the law (the MSMLA), Defendants are in breach of contract. *See* Doc. [68] ¶¶ 43–52, Count VII.

Second, Defendants SLS and US Bank next argue that Plaintiff failed to state a claim for breach of contract.  Doc. [90] at 18.  Plaintiff contends that SLS and US Bank did not perform in accordance with the terms and conditions of the Note and DOT.  The elements of breach of contract in Missouri are (1) a contract, (2) the parties had rights and obligations under the contract, (3) breach, and (4) damages.  *Kieffer v. Icaza*, 376 S.W.3d 653, 657 (Mo. banc 2012).  As explained above, the pleadings show that the Note and DOT were in violation of the MSMLA when formed, and the DOT clearly states that the loan cannot violate applicable law.  The DOT requires that if interest or charges collected are in violation of applicable law that any such amount collected will be refunded to the borrower in a direct payment or as a payment to the principal balance of the loan.  Doc. [68] ¶ 49, Count VIII.  Plaintiff alleges that once the second loan was transferred to SLS and US Bank, and they became the current servicers, that SLS and US Bank had an obligation to interpret the loan, and if violations of applicable law were discovered, to refund the amount collected in a payment of money to Plaintiff or principal of his loan.  Plaintiff alleges he asked SLS and US Bank to review the terms and conditions of the loan and they never informed him of any violation.  Moreover, when Plaintiff did discover the violation *on his own*, he allegedly "formally informed SLS of the violation, provided a link to the law, and requested for the balance to be adjusted and brought within the scope of the law, yet they refused and blatantly ignored all relevant information that showed the violation." Doc. [68] ¶ 47, Count VII.  Thus, Plaintiff pleaded a claim for breach of contract.

Finally, Defendants SLS and US Bank next argue that even if Plaintiff did state a claim for breach of contract, the action is time-barred.  Doc. [90] at 19.  The statute of limitations for breach of contract under Missouri law is five years and accrues when the injury is sustained and capable of ascertainment.  Mo. Rev. Stat. §§ 516.100, 516.120.  SLS and US Bank contend that the statute

of limitations on the alleged breach of contract claim began to run in 2010 when Plaintiff first discovered the alleged unlawful late fees when BOA was servicer of the loan. However, the fact that Plaintiff discovered late fees when BOA was servicer and BOA's subsequent failure to act then, has no bearing on when Plaintiff's loan was transferred to SLS and US Bank. Their duties arose pursuant to the DOT and Note. Plaintiff's loan transferred to SLS and US Bank on December 2014, and SLS sent Plaintiff a letter in January 2019 regarding the fees. Because Plaintiff filed suit against SLS in November 2019, his breach of contract claim is timely. Thus, at this stage in the proceedings, the pleadings show that Plaintiff's claim for breach of contract is not time-barred.

Therefore, the Court denies Defendants' SLS, US Bank, First Franklin, Merrill Lynch, BOA, and Carrington's motion to dismiss Count VII.

### E. RESPA Violations (Counts XI and XIII)

Plaintiff asserts Count XI against Defendants Carrington and First Franklin, alleging they failed to give Plaintiff notice of transfer, as required by the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605. As to Carrington, Plaintiff's own pleadings support the fact that Carrington *did* notify Plaintiff that it would be transferring the loan. *See* Doc. [68] ¶ 48. Nonetheless, the statute of limitations for a claim under RESPA is either one year or three years, depending on which provision was allegedly violated. 12 U.S.C. § 2614. In his Opposition Brief, but not Complaint,[26] Plaintiff concedes that the statute of limitations for his RESPA claim (Count XI) has expired but argues that fraudulent concealment may equitably toll the limitations period. Doc. [109] at 23. However, Plaintiff fails to describe both in his Opposition Brief or the Complaint itself any particular misconduct on the part of Carrington or First Franklin that would justify tolling the statute of limitations with regards to his RESPA claim. Accordingly, Plaintiff's RESPA claim

---

[26] Plaintiff failed to plead in his Complaint that equitable tolling should apply to Count XI.

(Count XI) is barred by 12 U.S.C. § 2614, and Plaintiff has shown no basis for tolling the limitations period.

Plaintiff asserts Count XIII against SLS only, alleging that SLS failed to adjust the balance of the demanded amount and investigate state law violations.  SLS claims Plaintiff failed to state a claim.  The Court disagrees.  RESPA imposes various duties on mortgage loan servicers. 12 U.S.C. § 2605.  One duty is to respond to certain borrower inquires, called "qualified written requests" in one of three ways.  *Id.* § 2605(e).  First, the servicer may correct the borrower's account and notify the borrower of the correction.  *Id.* § 2605(e)(2)(A).  Second, the servicer may, "after conducting an investigation," provide the borrower with "a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer." *Id.* § 2605(e)(2)(B)(i).  Or third, the servicer may, "after conducting an investigation," provide the borrower with the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer."  *Id.* § 2605(e)(2)(C)(i). If a mortgage loan servicer fails to comply with its duties to respond appropriately to a qualified written request, the individual borrower is entitled to "any actual damages to the borrower as a result of the failure."  *Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 715 (8th Cir. 2018) (quoting 12 U.S.C. § 2605(f)(1)(A)).  Here, Plaintiff alleges he made several requests to SLS to correct his account due to the illegal fees charged in violation of the MSMLA and that SLS has completely failed to adjust the balance of the amount or even investigate.[27]  At this time, Plaintiff has stated a claim against SLS for a violation of RESPA.

Therefore, the Court grants Defendants Carrington and First Franklin's motion to dismiss

---

[27] The Eighth Circuit holds that "investigate," for the purpose of RESPA, imposes a substantive obligation on mortgage loan servicers to conduct a reasonably thorough examination before responding to a borrower's qualified written request. *Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 717 (8th Cir. 2018).

Count XI and denies Defendant SLS's motion to dismiss Count XIII.

### F.  FDCPA Violations (Counts X and XII)

Plaintiff asserts two claims for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, against Defendants HRS (Count X) and SLS (Count XII).  SLS and HRS both argue that Plaintiff's claim is barred by the statute of limitations.  Doc. [77] at 11; Doc. [90] at 25.  A cause of action under the FDCPA must be filed "within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).

**Defendant SLS**: Plaintiff bases Count XII on the allegation that SLS (1) charged and attempted to collect an illegal property inspection fee six times; (2) sent out monthly statements that reflected a balance that is inaccurate with regards to the balance due; and (3) threatened to foreclose when SLS has a duty to know the claimed amount is illegitimate.  Doc. [68] ¶ 69, Count XII.  According to the pleadings, SLS attempted to collect the "illegal" fee from August 2019 to February 2020 and sent its Notice of Intent to Foreclose on July 2, 2019.  Plaintiff filed suit against SLS in November 2019, thus, Plaintiff's action against SLS is timely.  *See* 11 U.S.C. § 1692k(d).

**Defendant HRS**: Plaintiff bases Count X on allegations that HRS acted in a "misleading, false, or deceptive" manner when it concealed its identity and tricked Plaintiff into signing paperwork based on the assumption that HRS was part of First Franklin.  Doc. [68] ¶¶ 62–63, Count X.  HRS argues that Plaintiff's claim is time-barred because the limitation period began to run in August 2010, the month Plaintiff alleges he signed the loan modification Agreement.[28]  The Court agrees.  On the face of the Complaint, HRS sent Plaintiff the allegedly unlawful Agreement in 2010, and Plaintiff filed this action more than one-year later.  Thus, the one-year statute of limitation bars Plaintiff's FDCPA claim as against HRS.

---

[28] HRS also argues that it is not a "debt collector" as defined by the FDCPA.  The Court will not address this argument because it dismisses this claim on other grounds.

Nonetheless, Plaintiff argues that his action is timely because the "equitable doctrine of fraudulent concealment as it would toll the statute of limitations with Counts I and II [negligent misrepresentation] would equally be applied [here]." Doc. [108] at 15. Even the most liberal reading of Plaintiff's pleadings fails to establish that the one-year limitation period does not apply here. Although the Supreme Court has yet to "decide whether the text of 15 U.S.C. § 1692k(d) permits the application of equitable doctrines," *Rotkiske v. Klemm*, 140 S. Ct. 355, 361 n.3 (2019), the Eighth Circuit has repeatedly held that the FDCPA's statute of limitations is jurisdictional and cannot be tolled. *Mattson v. U.S. West Communications, Inc.*, 967 F.2d 259, 262 (8th Cir. 1992) (finding the FDCPA's statute of limitations as jurisdictional); *Hageman v. Barton*, 817 F.3d 611, 616 (8th Cir. 2016) ("It is well-established, as a general matter in the Eighth Circuit, that jurisdictional limitation periods are not subject to equitable tolling."). The Eighth Circuit's precedent makes sense because the Supreme Court specifically held that the statute of limitations for FDCPA claims begins to run on the date that the alleged violation occurs, not on the date when the plaintiff discovers the violation. *Rotkiske*, 140 S. Ct. at 358. Thus, that Plaintiff did not discover HRS's identity, and thus deceptive conduct, until 2019—even assuming HRS's deceptive conduct implicated the tolling doctrine of fraudulent concealment—such improper conduct would not toll the limitation period here because the violation occurred in 2010. *Id*.

Therefore, the Court grants HRS's motion to dismiss Count X and denies SLS's motion to dismiss Count XII.

### G.  Quiet Title (Counts XIV–XVI)

Plaintiff asserts three quiet title claims against Defendants SLS and US Bank (Counts XIV–XV) and Defendants BOA and Merrill Lynch (Count XVI). Plaintiff acknowledges that two of his claims for quiet title (Count XV and XVI) should be dismissed. Doc. [111] at 46; Doc. [112]

at 62.  However, he maintains in Count XIV that the Court invalidate the DOT and grant quiet title.  To state a cause of action to quiet title under Missouri law, the plaintiff must show "(1) ownership in the described real estate; (2) that the defendant claims some title, estate or interest to or in said premises; and (3) said claim is adverse and prejudicial to plaintiff."  *Witengier v. U.S. Bank NA*, No. 4:16-cv-1855-CEJ, 2017 WL 1429040, at *5 (E.D. Mo. Apr. 21, 2017).  "Plaintiff must also plead facts showing that he has a superior title to the property at issue than the defendants."  *Simms v. Nationstar Mortg., L.L.C.*, 44 F. Supp. 3d 927, 935 (E.D. Mo. 2014).

Here, Plaintiff does not assert he has superior title.  Rather, he contends that SLS and US Bank's actions (amounting to alleged breach of contract and violations of the MSMLA, RESPA, and FDCPA) should void any interest they have in the property via the lien and DOT.  Thus, Plaintiff failed to state a claim for quiet title because his assertions do not establish he has superior title.  *See Smith v. Select Portfolio Servicing, Inc.*, No. 2:16-cv-04203-NKL, 2016 WL 4942029, at *3 (W.D. Mo. Sept. 16, 2016) (reasoning that a plaintiff asserting a quiet title claim failed to state a claim where he did not "allege that he paid off the mortgage in full or that his property is no longer encumbered by the mortgage."); *see also Weimer v. Seterus Inc.*, No. 6:13-cv-03068-BCW, 2014 WL 12634291, at *5 (W.D. Mo. Sept. 18, 2014) (holding that a quiet title claim failed where plaintiffs asserted title was superior based on equitable principles), *aff'd*, 605 Fed. Appx. 587 (8th Cir. June 2, 2015); *Lackey v. Wells Fargo Bank, N.A.*, 747 F.3d 1033, 1037 (8th Cir. 2014) (holding that infirmities in the foreclosure proceedings would not support a quiet title claim).

Therefore, the Court grants Defendants BOA and Merrill Lynch's motion to dismiss Count XVI with prejudice and grants Defendants SLS and US Bank's motion to dismiss Counts XIV and XV with prejudice.

## CONCLUSION

The Court denies Defendants First Franklin, BOA, Merrill Lynch, and HRS's motion to dismiss Count I.  The Court denies Defendant BOA, Merrill Lynch, and HRS's motion to dismiss Count II and grants Defendants First Franklin and US Bank's motion to dismiss Count II.  The Court grants Defendants First Franklin, Merrill Lynch, and BOA's motion to dismiss Count III. The Court grants Defendants SLS, US Bank, First Franklin, BOA, Carrington, and Merrill Lynch's motion to dismiss Counts IV, V, VI, and VIII.  The Court denies Defendants SLS and US Bank's motion to dismiss Count IX.  The Court denies Defendants' SLS, US Bank, First Franklin, Merrill Lynch, BOA, and Carrington's motion to dismiss Count VII.   The Court grants Defendants Carrington and First Franklin's motion to dismiss Count XI.  The Court denies Defendant SLS's motion to dismiss Count XIII.  The Court grants HRS's motion to dismiss Count X.  The Court denies SLS's motion to dismiss Count XII. The Court grants Defendants SLS and US Bank's motion to dismiss Counts XIV and XV.  The Court grants Defendants BOA and Merrill Lynch's motion to dismiss Count XVI.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Home Retention Services, Inc.'s Motion to Dismiss, Doc. [76], is **DENIED** in part and **GRANTED** in part as Count X is **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Defendant Carrington Mortgage Services, LLC's Motion to Dismiss, Doc. [79], is **GRANTED** in part and **DENIED** in part as Counts IV, VI, and XI are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Defendants Bank of America, N.A, First Franklin Financial Corp., and Merrill Lynch, Pierce, Fenner & Smith, Inc.'s Motion to Dismiss, Doc. [82],

is **GRANTED in part and DENIED in part** as Counts III, IV, V, VI, VIII, XI, and XVI and Count II against Defendant First Franklin Financial Corp. are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Defendants Specialized Loan Servicing, LLC and U.S. Bank National Association, as Trustee for First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-FFC's Motion to Dismiss, Doc. [89], is **GRANTED in part** and **DENIED in part** as Counts II, IV, V, VI, VIII, XIV, and XV are **DISMISSED** with prejudice.

Dated this 13th day of January 2022.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE